UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CURTIS BLOXAM | ) | 3:21-CV-00391 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LOW COST INTERLOCK, INC. | ) | JUNE 9, 2022 |
| *Defendant*. | ) | |

MEMORANDUM OF DECISION
RE: DEFENDANT'S MOTION TO DISMISS (ECF NO. 21)

Kari A. Dooley, United States District Judge:

This case arises out of Plaintiff Curtis Bloxam's ("Plaintiff") use of an ignition locking device manufactured by Defendant Low Cost Interlock, Inc. ("LCI"), and the alleged failure of the device to operate or function properly. Plaintiff brings two claims—negligent infliction of emotional distress and a violation of the Connecticut Products Liability Act ("CPLA"), Conn. Gen. Stat. § 52-572n, for failure to warn. Pending before the Court is Defendant's motion to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), in which Defendant asserts that the Court lacks subject matter jurisdiction over Plaintiff's claims and that Plaintiff fails to adequately allege the elements of either cause of action. Defendant also seeks dismissal of the negligent infliction of emotional distress claim because it is precluded by the exclusivity provision of the CPLA. Plaintiff opposes the motion. For the following reasons, the Defendant's motion to dismiss is GRANTED.

**Allegations**

The Court accepts as true the following facts drawn from the Amended Complaint. Plaintiff is a resident of Connecticut. Compl. ¶ 1. Defendant is a foreign corporation, incorporated in California, that manufactures and provides breathalyzer devices ("the LCI device") placed in the

motor vehicles of people arrested for Driving Under the Influence ("DUI"). Compl. ¶ 2–3. The LCI device allows those with DUI arrests to continue driving during the pendency of their cases. Compl. ¶ 4. The arrestee blows into the LCI device, and if the device detects no alcohol, the driver can start the vehicle. Compl. ¶ 5. If the LCI device detects any alcohol on the driver's breath, it prevents the vehicle from starting. Compl. ¶ 6. Arrestees pay LCI for use of the product and pay the state of Connecticut installation fees. Compl. ¶ 8.

On September 27, 2020, Plaintiff was arrested for DUI by the Seymour Police Department. Following the arrest, the state granted Plaintiff a work permit and instructed the Department of Motor Vehicles ("DMV") to have an LCI device installed in Plaintiff's truck so that he could continue to run his company pending the resolution of his case. Compl. ¶ 9–10. Almost immediately upon installation of the LCI device, Plaintiff started experiencing issues with it. Compl. ¶ 11. The device prohibited Plaintiff's car from starting first thing in the morning, which caused him to be late and made his customers angry. Compl. ¶ 12. The alarm on the LCI device would also sound "for no good reason," which startled the Plaintiff and caused him annoyance. Compl. ¶ 13. On one occasion, the alarm sounded while Plaintiff was driving on the highway, which put him in severe danger. *Id.* He pulled off Interstate 95 to stop the alarm, but the truck would not start again, forcing Plaintiff to sit on the LCI device to warm it. *Id.* This incident caused him to be late for "his appointment." *Id.* Plaintiff alleges that "the colder it got outside, the more failures the device would have," and that the device's installer told him that the LCI device might register more failures the colder it is. Compl. ¶ 14. Plaintiff was also told to unplug the device at night to ease the LCI device starts in the mornings. *Id.* Plaintiff complained to the installer, who in turn attempted to call LCI but could not reach customer service. Compl. ¶ 15. The installer indicated that other people had complained about the LCI device. *Id.* Plaintiff ultimately, through

his attorney, complained to LCI via letter and email but received no response. Compl. ¶ 16. On February 15, 2021, the Connecticut DMV notified Plaintiff that the requirement to have the LCI device in his vehicle was going to be extended by thirty days due to the reported false failures. *Id.* Plaintiff alleges that because of LCI's "actions and inactions to rectify the failure of their device," Plaintiff suffered severe emotional distress, resulting in loss of sleep, anxiety, loss of appetite, reduction in libido, reduced production of work, feelings of failure and mood swings. Compl. ¶ 17.

**Discussion**

*Subject Matter Jurisdiction*

The Court first addresses, as it must, the question of whether it has subject matter jurisdiction over these claims. *See Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates Co.,* 436 F.3d 82, 85 (2d Cir. 2006) ("a district court must generally…establish that is has federal constitutional jurisdiction…before deciding a case on the merits."); *see also Morrison v. National Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) ("Determining the existence of subject matter jurisdiction is a threshold inquiry…"). Plaintiff has invoked this court's diversity jurisdiction pursuant to Title 28, U.S.C. § 1332. Defendant argues that Plaintiff has not alleged a good faith claim that the amount in controversy exceeds $75,000, as is necessary to satisfy the requirements of diversity jurisdiction.

When the parties are diverse, District courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." 28 U.S.C.A. § 1332. The party who invokes the jurisdiction of the court must prove with "reasonable probability" that its claim is for more than the statutory jurisdictional amount. *Tatum v. Odberg*, 650 F. Supp. 2d 185, 190 (D. Conn. 2009) (citing *Tongkook Am., Inc., v. Shipton*

3

*Sportswear Co.,* 14 F.3d 781, 784 (2d Cir. 1994)). And when the party invoking jurisdiction alleges an amount exceeding the jurisdictional threshold, there exists a "rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Id.* (citing *Wolde-Meskel v. Vocational Instruction Project Cmty., Servs., Inc.,* 177 F.3d 59, 63 (2d Cir. 1999)). The party opposing jurisdiction can then overcome the presumption by demonstrating to a "legal certainty" that the plaintiff cannot recover the jurisdictional amount. *Id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289 (1938)); *see also Horton v. Liberty Mut. Ins. Co.,* 367 U.S. 348, 353 (1961). And legal certainty is analyzed by what appears on the face of the complaint. *See Wolde-Meskel*, 166 F.3d at 63; *see also Horton*, 367 U.S. at 353 (quoting *St. Paul Mercury*, 303 U.S. at 289) ("The amount in controversy is to be determined from the complaint itself, and, absent a showing that the amount claimed was not sought 'in good faith,' it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."). "The legal impossibility of recovery must be so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim." *Chase Manhattan Bank, M.A. v. Am. Nat. Bank & Tr. Co. of Chi.*, 93 F.3d 1064, 1070 (2d Cir. 1996). "[E]ven where [the] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." *Zacharia v. Harbor Island Spa, Inc.* 684 F.2d 199, 202 (2d Cir. 1982).

Although the pleadings do not specify the amount of damages sought by the Plaintiff, by invoking only the Court's diversity jurisdiction, the Plaintiff tacitly makes a good faith representation that the amount in controversy is greater than $75,000.[1] *See Tongkook*, 14 F.3d at 785–86. Defendant challenges this assertion as a factual matter but does not point to any evidence to suggest bad faith on the part of the Plaintiff or an attempt to feign jurisdiction. *See Wolde-*

---

[1] Plaintiff explicitly affirms this assessment in his opposition to the motion to dismiss.

*Meskel*, 166 F.3d at 63. Defendant does attempt to rebut the presumption of good faith by reference to a communication between Plaintiff's counsel and LCI's insurance carrier, in which counsel ostensibly offered to settle the claim pre-suit for $10,000. Further, Defendant relies on its counsel's discussions with Plaintiff's counsel, in which there was no mention of monetary damages, but only a request that LCI contact the State of Connecticut to have Plaintiff's additional time with the LCI device reduced or removed.[2] As a result of these discussions, Defendant opines that Plaintiff filed this action in order to affect the outcome of his criminal proceeding. This accusation, however, is conclusory and irrelevant to the question of whether the plaintiff might seek damages in excess of $75,000, regardless of his possibly mixed motives. Plaintiff lists a host of compensable injuries, including "loss of sleep, anxiety, loss of appetite, reduction in libido, reduced production of work, feelings of failure and mood swings." Compl. ¶ 17. The Court cannot conclude to "a legal certainty" that the amount in controversy does not reach the jurisdictional threshold. *See Adler v. Payward, Inc.*, 827 Fed. Appx. 133, 135 (2d Cir. 2020).

*Rule 12(b)(6) – CPLA Claims*

Defendant next seeks to dismiss all claims on the basis that the Amended Complaint fails to state a claim upon which relief may be granted. On a motion to dismiss under Rule 12(b)(6), the Court "must accept as true the factual allegations in the complaint and draw all inferences in the plaintiff's favor." *Kinsey v. New York Times Co.*, 991 F.3d 171, 174 (2d Cir. 2021) (quotation marks, alterations and citation omitted). To survive a motion to dismiss filed pursuant to Rule 12(b)(6), the "complaint must 'state a claim to relief that is plausible on its face,'" setting forth

---

[2] In furtherance of public policy encouraging settlements and avoiding expensive litigation, Federal Rule of Evidence 408 bars the admission of most evidence of offers of compromise and settlement discussions between parties. *See* Fed. R. Evid. 408. It appears that the discussions cited by the Defendant may well fall within the scope of FRE 408. The Court need not decide this question, as the discussions, even if considered, do not alter the outcome of the Court's analysis.

5

"factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kolbasyuk*, 918 F.3d at 239 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief 'does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 556). At this stage, "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch*, 952 F.3d at 75.

Under the CPLA, a plaintiff may assert: (1) strict liability in tort; (2) negligence; (3) breach of warranty, express or implied; (4) breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; and (5) misrepresentation or nondisclosure, whether negligent or innocent. *See* Conn. Gen. Stat. § 52-572m(b); *see also Hunte v. Abbott Laboratories, Inc.*, 556 F. Supp. 3d 70, 82 (D. Conn 2021). Here, although not entirely clear, Plaintiff appears to allege a CPLA violation under the failure to warn or instruct theory. In order to establish a claim under the CPLA, a plaintiff must plausibly allege the following elements: (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition.³ *Bifolck v. Philip Morris*, 324 Conn. 402, 433–34, 152 A. 3d 1183 (2016).

---

³ Plaintiff also alleges a common law negligent infliction of emotional distress claim, discussed at length *infra*.

While his allegations are sparce, Plaintiff alleges that LCI sold the device (allowing for the inference that it is in the business of so doing) and that the product was in a defective condition that caused his injuries, *see infra.* However, Defendant avers there are no allegations with respect to the condition of the LCI device at the time of sale or with respect to any changes—or lack thereof—to the LCI device. As a result, Defendant argues that Plaintiff has failed to allege the necessary elements of a claim for products liability under any theory. Plaintiff does allege, however, that he "had the device installed and almost immediately started having issues with the device." Compl. ¶ 11. Additionally, Plaintiff alleges that he complained "to the installer," a woman who then tried to notify LCI of the complaint. Compl. ¶ 15. At the motion to dismiss stage, accepting as true all factual allegations and drawing all inferences in favor of Plaintiff, it is a reasonable inference that the alleged defect existed at the time of installation and that the device was installed without substantial change to its condition.[4] *See Kinsey*, 991 F.3d at 174.

*Failure to Warn*

Defendant further argues that Plaintiff's claim for failure to warn under the CPLA should be dismissed because it fails to allege the necessary elements of such a claim. Defendant posits that Plaintiff did not plead any facts to support his claim that the LCI device was unreasonably dangerous, and thus, there was no failure to warn of an unreasonably dangerous condition. Moreover, Defendant attests that the "false failures" alleged by Plaintiff demonstrate that the device was in fact working properly. In response, Plaintiff argues that he did allege all the necessary elements for a products liability claim under a failure to warn theory.

---

[4] In his opposition to Defendant's motion to dismiss, Plaintiff claims that Count Two of the Amended Complaint states that the device "came as it came and was installed by an agent of LCI." Pl. Mem., ECF No. 22, at 5. The Court disagrees. The Amended Complaint does not so clearly allege that the LCI device arrived in any condition—let alone a defective one—nor that an agent of LCI installed the device.

A product may be defective because a manufacturer or seller fails to warn of the product's unreasonably dangerous propensities. *See* Conn. Gen. Stat. § 52-572q. To plead a failure to warn claim, the plaintiff must allege that the "manufacturer or seller failed to warn of the product's unreasonably dangerous propensities" where "under such circumstances, the failure to warn, by itself, constitutes a defect." *Sharp v. Wyatt, Inc.*, 31 Conn. App. 824, 833 (1993), *aff'd*, 230 Conn. 12 (1994). Courts evaluating a failure to warn claim look for: (1) whether the plaintiff satisfied the five elements governing all product liability claims (as described above); (2) whether the plaintiff has shown that product instructions or warnings were required, and if so, whether they were adequate; and (3) whether the plaintiff has established that they would not have suffered the alleged harm had adequate warning or instructions been provided. *See Karavitis v. Makita U.S.A., Inc.* 243 F. Supp. 3d 235, 252–53 (D. Conn. 2017).

Thus, a plaintiff must allege that "if adequate warnings or instructions had been provided, the claimant would not have suffered the harm." Conn. Gen. Stat. § 52-572q(c); *see also Schulz v. Medtronic, Inc.*, No. 3:21-cv-00414 (MPS), 2022 WL 503960, at *4 (D. Conn. Feb. 18, 2022) (finding that a plaintiff failed to state a failure to warn claim because it was not clear from the complaint whether the defendant provided any warnings or instructions at all or how those instructions were inadequate); *see also Philadelphia Indem. Ins. Co. v. Lennox Indus., Inc.*, No. 3:18-CV-00217 (CSH), 2019 WL 1258918, at *3 (D. Conn. Mar. 18, 2019) (absent basic factual support for a failure to warn claim—for example, whether any warnings or instructions were given at all, and if so, what they said and why they were inadequate—claim is nothing more than a conclusory assertion that the Court must disregard). In *Schulz*, the court found that plaintiff's allegation alone was insufficient to state a claim for failure to warn because it did not indicate, nor could the court infer, why any warnings (or lack thereof) were inadequate or that the plaintiff

8

would have suffered the harm if adequate warnings were provided. *See generally,* 2022 WL 503960; *see also Mals v. Smith & Nephew, Inc.*, No. 3:19-CV-01770 (VLB), 2020 WL 3270835, at *6 (D. Conn. June 17, 2020) (dismissing plaintiff's failure to warn claim because he failed to specify what warnings he received and how they were deficient). Here, it is not clear from the Amended Complaint whether any warnings or instructions were given at all, and if so, how they were inadequate. Neither does Plaintiff allege that had adequate warnings or instructions been given, he would not have suffered harm. And it is difficult to contemplate how he could allege that adequate warnings would have reduced or eliminated the harm he allegedly suffered. The Plaintiff was required to use the LCI device as a result of his DUI arrest, so he would have had the same experience, warnings or not. Rather, Plaintiff merely alleges that the LCI device was defective because it would sometimes not allow the car to start, the alarm on the device would sound for "no good reason," and the colder it got outside, the more "failures" the device would have.[5] Without more, Plaintiff has not alleged the necessary elements of a failure to warn claim and the claim must be dismissed.[6]

---

[5] The Court does not reach any decision as to whether these allegations suffice to plausibly allege that the LCI device was unreasonably dangerous.

[6] The Court notes that the Defendant attached as Exhibit A to its motion LCI's "Reference & Troubleshooting User Guide." ECF No. 21. Though not dispositive of the motion, the Guide appears to belie Plaintiff's argument that the device was working improperly at all. The Guide specifically notes that if random retesting is required in the user's jurisdiction, "at random intervals following an engine start, the system will power on, sound a series of continuous beeps…" Ex. A at 3. It further states, "while driving, the device will request random rolling tests…It is suggested to pull your vehicle over…ROLLING RETESTS ARE NOT OPTIONAL. The device will beep continuously to alert you of a rolling retest request." Ex. A at 8. Assuming that Plaintiff's reference to the device's "alarm" is the notification of a rolling retest, Plaintiff may have had adequate warning of the device's functioning if he received the Guide. The Guide further warns that "in extreme cold, the device must warm the sensor to a set temperature…The temperature of the sensor and mouth are key factors in alcohol breath testing." Ex. A at 8. Again, if he received the Guide, Plaintiff appears to have had adequate warning of the fact that the device must warm to a set temperature in the colder weather.

*Negligent Infliction of Emotional Distress*

Finally, Defendant argues that Plaintiff's negligent infliction of emotional distress claim must be dismissed because it violates the exclusivity provision of the CPLA.[7] Plaintiff responds that there is no exclusivity violation because his negligence claim stems from the "actions and inactions" of LCI employees rather than the LCI device itself. Plaintiff's argument is unpersuasive.

Under the CPLA, a products liability claim includes all claims "brought for personal injury" caused by the "manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product." Conn. Gen. Stat. § 52-572m(b); *see also Glover et al. v. Baush & Lomb, Inc. et al.*, -- Conn. -- (2022).[8] A claim under the CPLA is "in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product." Conn. Gen. Stat. § 52-572n(a). Therefore, the language of the exclusivity provision intends for the CPLA to be the exclusive remedy for a party who seeks recompense for personal injury caused by a product defect, including damages caused by the installation of a defective product. *See* Conn. Gen. Stat. § 52-572m; *see also Gerrity v. R.J. Reynolds Tobacco Co.*, 263 Conn. 120, 128, 818 A.2d 769 (2003); *see also Winslow v. Lewis-Shepard, Inc.*, 212 Conn. 462, 471 (1989) ("The legislature clearly intended to make our products liability act an exclusive remedy for claims falling within its scope."). Plaintiff counters that his alleged injuries are the "result of LCI's actions and inactions

---

[7] As a secondary argument, Defendant also includes that Plaintiff did not allege the necessary elements comprising a negligent infliction of emotional distress claim under Connecticut law. The Court does not address this argument, as it dismisses the negligence claim on exclusivity grounds. *See infra.*

[8] In *Bausch & Lomb*, the Connecticut Supreme Court determined that the CPLA's exclusivity provision permits a plaintiff to bring a separate and distinct claim for damages when—and only when—(1) the plaintiff does not seek a remedy for personal injury, death or property damage that was caused by a defective product, or (2) the plaintiff seeks a remedy for personal injury, death or property damage that was caused by the unscrupulous advertising of a product that was not defective. Plaintiff's claims here, however, fall into neither category. He explicitly seeks a remedy for personal injury that was caused by an allegedly defective product, which falls squarely within the purview of the CPLA's exclusivity.

to rectify the failure of their device." Compl. ¶ 17. This argument side steps the fact that the source of Plaintiff's alleged injury is the alleged failure of the device itself, not the failure of LCI employees to adequately respond to his complaints. Accordingly, Plaintiff cannot assert a separate common law negligence claim separate and apart from his CPLA claim and the motion to dismiss the negligence claim is granted. *See Winslow* 212 Conn. at 471; *see also Densberger v. United Techs. Corp.*, 297 F.3d 66, 70 (2d Cir. 2002) (The CPLA "bars separate common law *causes of action* in product liability cases.") (emphasis in original).

**Conclusion**

For the foregoing reasons, the Defendant's motion to dismiss is GRANTED. The Clerk of Court is directed to close the case.

**SO ORDERED** at Bridgeport, Connecticut, this 9th day of June 2022.

                                         /s/ Kari A. Dooley
                                         KARI A. DOOLEY
                                         UNITED STATES DISTRICT JUDGE